# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DEBRA LYNN BOWEN, | ) | 1:11cv01508 DLB |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| vs. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## BACKGROUND

Plaintiff Debra Lynn Bowen ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed her application on March 27, 2008, alleging disability since February 5, 2007, due to a bulging disc in her back, neck problems and right knee problems. AR 120-121, 142-148. After the application was denied initially and on reconsideration, Plaintiff requested a

hearing before an Administrative Law Judge ("ALJ").  AR 56, 65, 84-85.  On April 7, 2010, ALJ John Cusker held a hearing in Fresno, California.  AR 28-55.  He issued a decision denying benefits on June 25, 2010.  AR 9-21.  On July 20, 2011, the Appeals Council denied review.  AR 1-5.

Hearing Testimony

ALJ Cusker held a hearing on April 7, 2010, in Fresno, California.  Plaintiff appeared with her attorney, Robert Christenson.  Vocational expert ("VE") Judith Najarian also appeared and testified.  AR 28.

Plaintiff testified that she was 50 years old at the time of the hearing.  AR 32.  She has a driver's license and drives short distances.  She drove from Porterville to Fresno for the hearing, but had to stop twice to walk around.  AR 33.  Plaintiff completed the ninth grade and can read, write and do simple arithmetic.  AR 33.  She worked for Porterville Developmental Center for 27 years, as a housekeeper.  She has not worked since February 5, 2007, when Workers' Compensation "put [her] disabled."  Plaintiff was found permanent and stationary in March 2007.  AR 33-34.  Plaintiff testified that she could not work because of moderate to severe neck pain and almost constant back pain that radiates down her right arm.  When she isn't on medication, she can hardly move her right arm, and her medication makes her feel like she's drunk.  AR 35.  Plaintiff explained that her pain medications (Norco and Soma) make her dizzy and a little nauseous for a while.  AR 35, 41.  Plaintiff also had surgery for a torn meniscus and fractured her leg in 2008.  She still has problems with swelling in her right knee.  AR 36, 39.

Plaintiff testified that she still rides her horse, but not often.  She can't saddle the horse and needs assistance to mount the horse.  Plaintiff brushes the horse once in a while.  AR 37, 46.

Plaintiff was taking numerous medications, including Xanax for anxiety.  She tried physical therapy in 2002, but it left her in tears.  AR 37-38.

For her back, Plaintiff takes medication and gets massages.  AR 40.  Her pain medications do not totally relieve the pain.  Soma helps at night to relax her neck and back so she can sleep, but she still sometimes needs a sleep aid.  AR 41.  Other than Xanax, no other treatment has been recommended for her anxiety.  AR 41.

Plaintiff thought that she could walk for about a half block before her lower back starts to spasm.  She thought she could stand for about 10 to 15 minutes before needing to sit or lay down.  AR 42.  She cannot stoop or squat much and her right hand is sometimes numb.  AR 42. When she is taking her medications, she experiences numbness in her right arm about four times per week.  It burns every morning until she takes her medication.  AR 43.  She is able to grip with her left hand, but asks her husband to open jars and cans.  Plaintiff thought that she could lift a gallon of milk, or 10 pounds.  AR 43.  She could sit for 15 to 20 minutes.  AR 44.  Plaintiff is able to take care of her personal grooming and does a little cooking.  AR 44-45.

Typically, Plaintiff gets up around 8 a.m., then drinks coffee and watches the Today Show.  AR 44.  She does the breakfast dishes and will do small loads of laundry.  She also does light dusting, but never vacuums.  AR 45.  Plaintiff does the grocery shopping with the assistance of her husband.  AR 45.  In the afternoon, Plaintiff usually makes a sandwich, takes a nap and walks her dogs for 15 minutes.  AR 45.  When her husband gets home, they make dinner together.  She attends church with her mother once in a while.  AR 45-46.

When questioned by her attorney, Plaintiff explained that she needed to take rest breaks throughout the day because of her neck and back pain.  She takes at least one nap, sometimes two.  AR 46-47.  She has at least five really bad days a month, where she doesn't even get dressed.  AR 47.  On those days, her arm and neck burn when she wakes up and the medication only dulls the pain.  AR 47.  Her pain has gotten worse in the last two years because prior to that, there was no radiation into her arm.  AR 47.

Plaintiff testified that the medication makes it difficult for her to concentrate.  About 20 to 25 minutes after she takes it, she feels "real loopy."  She takes this medication three times a day.  AR 48.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and experience.  This person could not lift, push or pull more than 20 pounds occasionally, had to avoid repetitive work at or above shoulder level with both shoulders and could not frequently kneel, squat, crouch or crawl.  This person could not perform Plaintiff's past relevant work, but could perform the positions of cashier, sales attendant and counter clerk.  AR 52.

For the second hypothetical, the ALJ asked the VE to assume a person with subjective symptoms of pain that would frequently interfere with attention and concentration.  This person could maintain attention and concentration for ten minutes at a time, but could perform low stress jobs.  This person could sit for no more than 15 minutes at a time, about four hours total, and could stand for no more than five or ten minutes at a time, about two hours total.  This person would need to be able to change positions at will, and would need to walk for at least five minutes after sitting for 20 to 30 minutes.  This person may need to take unscheduled breaks as often as three times per week, and such breaks may last all day.  This person could not lift ten pounds and could rarely lift up to ten pounds, rarely look up or down, occasionally turn the head right or left, and rarely hold the head in a static position.  This person could rarely twist, crouch or climb stairs, occasionally stoop, and never climb ladders.  This person would have significant limitations in repetitive reaching, handling or fingering with the right dominant hand.  This person may have more than four bad days per month.  The VE testified that this person could not work.  AR 53-54.

Medical Record

Plaintiff suffered a work-related injury on October 16, 2002, when she tripped and fell on her right knee. AR 261. She underwent arthroscopic surgery on the right knee on April 7, 2003. AR 263, 297-298.

Plaintiff had a second work-related injury on September 23, 2003, when she suffered a cervical strain resulting from a "client altercation." AR 190-258. An MRI of Plaintiff's cervical spine performed on June 3, 2004, revealed minimal early degenerative disc disease at C6-7. AR 191. She was released to full duty work, without limitations, on June 16, 2004. AR 190.

On July 7, 2005, Plaintiff underwent a Qualified Medical Evaluation performed by Kenneth Baldwin, M.D. He diagnosed status post arthroscopy of the right knee with grade III chondromalacia, mechanical low back pain, and cervical spine pain, resolved. Other than self-management exercises, no further treatment was needed. He opined that Plaintiff was precluded from squatting and kneeling, and could not perform very heavy lifting. Based on her job description, she was capable of returning with her usual and customary work activities. AR 260-267.

On September 29, 2005, treating physician Mark L. Tindall, M.D., indicated that Plaintiff's right knee grade III chondromalacia could progress to grade IV chondromalacia, and then to post traumatic osteoarthritis. AR 259.

Dr. Baldwin prepared a supplemental report on November 1, 2005. After reviewing Dr. Tindall's suggestion, Dr. Baldwin indicated that his opinions in the July 15, 2005, report remain the same and that he would not change any issues pertaining to future treatment. AR 392-393.

Plaintiff saw Sanjay J. Chauhan, M.D., on February 9, 2006, for a neurologic consultation. She complained of neck pain, upper, mid and lower back pain and right knee pain and was currently taking Tylenol and Vicodin. On examination, muscle strength and tone were normal in all extremities. Sensation to light touch was normal and gait was normal. There was

slight spasm in the paracervical muscles, more on the right than the left, as well as slight paralumbar muscle spasm in the lower region.  Plaintiff also had mild to slight spasm and tenderness of the parathoracic muscles from T2-T8, mostly on the left side.  Range of motion of the shoulders was limited due to cervical spine pain.  Plaintiff's right knee was tender medially, but both knees had full range of motion.  He diagnosed cervical strain with right cervical radiculitis, thoracic strain, mostly left-sided, lumbar strain and right knee strain, status-post surgery in April 2003 with residual.  Dr. Chauhan believed that Plaintiff could continue her work duties with minor modifications of "no pushing or pulling of laundry carts," effective February 9, 2006, to March 24, 2006.  He recommended an MRI and physical therapy, prescribed Soma and instructed Plaintiff to continue Vicodin.  AR 474-481.

An MRI of the cervical spine taken on February 11, 2006, revealed a complex mass in the right lobe of the thyroid and moderate bilateral neural foraminal narrowing secondary to a 6 mm posterior disc bulge.  AR 483-485.  An MRI of her thoracic spine revealed 2 mm posterior disc bulges at T2-T3 and T6-T7, without evidence of canal stenosis or neural foraminal narrowing, and a thyroid mass.  AR 486-489.  An MRI of the lumbar spine revealed a 2-3 mm posterior disc bulge and facet joint hypertrophy, without evidence of canal stenosis or neural foraminal narrowing at L5-S1.  AR 491492.

Plaintiff underwent electrodiagnostic studies on March 23, 2006.  The study was negative for cervical radiculopathy or compressive neuropathy at either wrists or elbows.  AR 468.

On April 20, 2006, Dr. Chauhan reviewed additional medical records.  MRIs of the cervical spine and lumbar spine showed worsening of symptoms.  Plaintiff was to continue modified duty with no pushing or pulling heavy laundry cards.  AR 458-467.

Plaintiff saw Craig R. MacClean, M.D., on September 12, 2006, for an Agreed Medical Examination.   She complained of neck pain, with radiation to the top left shoulder, low back pain and right knee pain.  On examination, range of motion of the head and neck was good with

some palpable paraspinous muscle spasm and there was no evidence of any motor or sensory deficits to the upper or lower extremities.  Gait was normal, though range of motion of the thoracolumbar spine showed palpable paraspinous muscle spasm with a suggestion of scoliosis. Range of motion of both lower extremities was full and equal.  Patellar apprehension test was positive on the right.  Dr. MacClean reviewed medical records dating back to 2002 and diagnosed status-post arthroscopic chondroplasty right knee with early posttraumatic arthritis, and cervical and lumbar contusion with chronic strain.  He opined that Plaintiff could not perform very heavy work and could not kneel, squat or perform repetitive climbing.  AR 436-453.

On December 14, 2006, Dr. Chauhan noted neck spasms and instructed Plaintiff to continue her medications.  AR 423.

Plaintiff saw Robert L. Simmons, M.D., on February 2, 2007.  Plaintiff reported radiating neck pain, low back pain, left hip pain and knee pain.  Plaintiff's general examination was unremarkable.  Neck range of motion was reasonably full but there was more pain with flexion than extension.  She had full range of motion in her shoulders, there was mild tenderness in her midback and there was some discomfort in the lumbar area with straight leg raising.  There was crepitance in the knees when she stepped on a platform bilaterally.  Sensory and motor examination was intact.  Dr. Simmons diagnosed neck pain with left radiculitis, cervical spondylosis at C6-7, bulging disc thoracic spine T2-3 and T6-7 by report, low back pain and a benign thyroid mass.  Dr. Simmons ordered new diagnostic tests.  AR 420-421.

A February 21, 2007, MRI of Plaintiff's cervical spine showed a left-sided disc bulge/broad-based disc protrusion at C6-7, with mild to moderate narrowing of bilateral C6-7 neural foramina, mild narrowing of the right C4-5 neural foramen and a 3.9-cm thyroid mass. AR 417-418.  Cervical spine x-rays taken the same day show straightening of the cervical

lordosis, cervical spondylosis with disc space narrowing at C6-7, and narrowing of the right C4-5 neural foramen.  AR 419.

Plaintiff returned to Dr. Simmons on February 21, 2007.  Her examination was unchanged, with intact strength in her upper limbs, normal gait and normal reflexes.  Dr. Simmons noted that recent cervical x-rays were unremarkable and a cervical MRI showed a small midline disc protrusion at C6-7, but with no major impingement.  He did not recommend cervical spine surgery and considered her condition permanent and stationary.  Dr. Simmons noted that there was at least a slight change during Plaintiff's lifetime of the C6-7 disc getting worse and she may require surgery later in life.  AR 415-416.

On March 22, 2007, Plaintiff returned to Dr. Chauhan.  She continued to complain of neck pain with radiation to the left upper extremity.  She also complained of back pain, not as intense, and intermittent right knee pain.  On examination, muscle strength was 5/5 in all extremities and muscle tone was normal in all extremities.  Sensation to light touch was normal and gait was normal.  Paracervical muscles showed slight spasm, more on the right than the left, with reduced range of motion.  Paralumbar muscles also showed slight muscle spasm in the lower region, with reduced range of motion.  There was mild to slight spasm and tenderness of the parathoracic muscles from T2-8, mostly on the left side.  Plaintiff's right knee was tender, but both knees had full range of motion and no effusion.  AR 403-408.

Dr. Chauhan diagnosed cervical strain with right cervical radiculitis and MRI positive for 6 mm disc protrusion at C6-7, thoracic strain, mostly left-sided, lumbar strain and right knee strain, status-post surgery in April 2003 with residual.  Plaintiff was permanent and stationary for the cervical spine as of March 21, 2007, and had been previously considered permanent and stationary for the right knee and low back.  Plaintiff could not lift, push or pull more than 20 pounds occasionally, and had to avoid repetitive work at or above shoulder level with both shoulders.  She also had to avoid frequent kneeling, squatting, crouching or crawling.  Dr.

Chauhan recommended that Plaintiff continue with her current medication, Vicodin and Soma, and perform home exercises as tolerated.  AR 403-409.

On June 28, 2007, Plaintiff returned to Dr. Chauhan.  She denied new injuries and reported that her medications helped control her symptoms.  Her examination and diagnoses were unchanged.  He recommended that Plaintiff continue with Vicodin and Soma and perform home exercises as tolerated.  AR 496-500.

Plaintiff returned to Dr. Chauhan on October 19, 2007.  Plaintiff denied new injuries and reported that medication was helping control her symptoms.  Her examination and diagnoses remain unchanged.  AR 523-527.

Plaintiff returned to Dr. Chauhan on March 5, 2008, and complained that her low back pain has increased with radicular symptoms to the left buttock and posterior thigh.  Her examination was unchanged except for decreased left hip flexion due to low back pain and positive straight leg raising to the left at 75 degrees.  He diagnosed cervical strain with right cervical radiculitis and MRI positive for 6 mm disc protrusion at C6-7, thoracic strain, mostly left-sided, lumbar strain with left lumbar radiculopathy, i.e., exacerbation, and right knee strain, status-post surgery in April 2003 with residual.  Plaintiff was characterized as a Medically Qualified Injured Worker and was going through medical retirement through her employer since modified work was not available.  He discontinued Vicodin because Plaintiff was becoming tolerant and began Norco.  Dr. Chauhan also increased the Soma dose and requested additional MRIs.  AR 518-522.

Plaintiff saw Dr. Chauhan on April 30, 2008.  Her examination and diagnoses were unchanged.  AR 639-643.

Plaintiff had an MRI of the lumbar spine performed on May 6, 2008.  The scan showed that multilevel congenitally short pedicles, early facetal degenerative changes and ligamentum

lavum hypertrophy resulted in borderline mild central spinal stenosis without evidence of disc bulge, herniation or significant degenerative disc disease.  AR 662.

An X-ray of Plaintiff's right knee taken on May 12, 2008, revealed an acute fracture of the lateral tibial plateau.  AR 632.

On May 21, 2008, State Agency physician James V. Glaser, M.D., completed a Physical Residual Functional Capacity Assessment.  He opined that Plaintiff could occasionally lift 20 pounds, ten pounds frequently, stand and/or walk for six hours, and sit for six hours.  Plaintiff could frequently climb ramps and stairs and balance, and could occasionally climb ladders, ropes and scaffolds, stoop, kneel, crouch and crawl.  Plaintiff could not perform frequent overhead reaching bilaterally.  AR 618-622.  This opinion was affirmed in September 2008.  AR 660.

X-rays of the right knee taken on June 4, 2008, showed that the fracture was healing and in good position.  AR 655.

Plaintiff returned to Dr. Chauhan on July 24, 2008.  Since her last visit, Plaintiff sustained a fractured right leg when a horse hit her.  Dr. Chauhan noted that her most recent MRI was somewhat worse than the prior MRI.  Her examination was limited due to her leg fracture and her diagnoses were unchanged.  Dr. Chauhan recommended that Plaintiff continue her medications and repeat the MRI.  AR 633-638.

On November 12, 2008, Plaintiff saw Dr. Chauhan.  She complained of sleep difficulty due to chronic pain.  Her examination was unchanged and Dr. Chauhan prescribed Ambien.  AR 703-707.

Plaintiff saw Dr. Chauhan on March 5, 2009.  Her complaints remained unchanged.  Dr. Chauhan again prescribed Ambien, even though it was not authorized previously by the utilization review board.  AR 698-702.

Dr. MacClean prepared a supplemental report on April 16, 2009.  After reviewing recent medical records, he opined that Plaintiff could not perform repetitive twisting of the head and neck.  He did not believe that Plaintiff was presently a surgical candidate.  AR 664-666.

Plaintiff returned to Dr. Chauhan on June 9, 2009, and denied new injuries.  She continued to complain of neck pain, back pain and right knee pain, and reported that she was having difficulty sleeping because of chronic neck and back pain.  Her examination was unchanged and a diagnosis of insomnia was added.  Dr. Chauhan also added Lunesta to her medications.  AR 686-690.

In November 2009, Dr. Chauhan examined Plaintiff and noted that her overall condition remained unchanged.  He wrote a note to excuse her from jury duty due to her intolerance to prolonged sitting.  AR 756-761.

Plaintiff saw Dr. Chauhan on February 18, 2010.  He noted that Plaintiff's medications allowed her to remain functional.  Plaintiff reported that she was medically retired as of February 5, 2009, since her employer could not accommodate her work restrictions.  Her complaints and examination were unchanged.  He recommended that Plaintiff continue her medications and home exercise program.  AR 749-754

On February 18, 2010, Dr. Chauhan completed a Residual Functional Capacity Questionnaire.  Plaintiff's prognosis was poor and she suffered moderate to severe pain.  He believed that Plaintiff's pain would frequently interfere with attention and concentration, and that she could maintain attention and concentration for ten minutes at a time.  Plaintiff was capable of a low stress job, however, "due to anxiety."  Plaintiff could walk one-half block, sit for 15 minutes and stand for 10 minutes at a time.  In total, she could sit for about four hours and stand for about two hours.  She would need to walk every 20 to 30 minutes, for five minutes each time. Plaintiff also needed a job that would allow for at-will shifting of positions.  She would need to take three unscheduled breaks per week that would last the whole day.  Plaintiff could rarely lift

11

less than ten pounds and could rarely look down, look up or hold her head in a static position. She could occasionally turn her head right or left.  Plaintiff could rarely twist, crouch and climb stairs, but could never climb ladders.  She could occasionally stoop.  Plaintiff would have reaching restrictions with both arms.  She would have good days and bad days and would likely be absent from work more than four days per month.  Dr. Chauhan concluded that Plaintiff has chronic pain syndrome and could not work.  AR 723-727.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of cervical, thoracic and lumbar strain and right knee strain status-post 2003 surgery.  AR 14.  She retained the residual functional capacity ("RFC") to lift, carry, push or pull 20 pounds occasionally, though she needed to avoid repetitive work at or above shoulder level, bilaterally.  Plaintiff could not frequently kneel, squat, crouch or crawl.  AR 15.  With this RFC, Plaintiff could not perform her past relevant work but could perform a significant number of jobs in the national economy.  AR 19-20.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).
This Court must uphold the Commissioner's determination that the claimant is not disabled if the
Secretary applied the proper legal standards, and if the Commissioner's findings are supported
by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv*., 812 F.2d 509, 510
(9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in
substantial gainful activity due to a medically determinable physical or mental impairment which
has lasted or can be expected to last for a continuous period of not less than 12 months.  42
U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of
such severity that he is not only unable to do her previous work, but cannot, considering his age,
education, and work experience, engage in any other kind of substantial gainful work which
exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).
The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th
Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated
regulations which contain, inter alia, a five-step sequential disability evaluation process.  20
C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found
that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her
disability and (2) has an impairment or a combination of impairments that is considered "severe"
(cervical, thoracic and lumbar strain and right knee strain status-post 2003 surgery) based on the
requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or
combination of impairments which meets or equals one of the impairments set forth in Appendix
1, Subpart P, Regulations No. 4; (4) could not perform her past relevant work, but (5) could
perform a significant number of jobs in the national economy.  AR 14-20.

Here, Plaintiff argues that the ALJ erred in failing to (1) adopt the opinions of Dr. Chauhan; (2) find her credible; and (3) discuss, much less consider, the side effects of her medications.  AR 10.

## DISCUSSION

A.   Analysis of the Medical Evidence

Plaintiff first argues that the ALJ improperly rejected Dr. Chauhan's opinions dated February 18, 2010, and March 22, 2007.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995).  Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record.  *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes  v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.  *Embrey v. Bowen*, 849 F.2d 418, 421 22 (9th Cir.1988).  Therefore, a treating physician's opinion must be given controlling weight if it is well-supported and not inconsistent with the other substantial evidence in the record.  *Lingenfelter v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).

In *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007), the Ninth Circuit reiterated and expounded upon its position regarding the ALJ's acceptance of the opinion an examining physician over that of a treating physician.  "When an examining physician relies on the same

clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn*, 495 F.3d at 632; *Murray*, 722 F.2d at 501-502. "By contrast, when an examining physician provides 'independent clinical findings that differ from the findings of the treating physicians, such findings are substantial evidence.'" *Orn*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir.1985). Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence, *see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir.1985), or (2) findings based on objective medical tests that the treating physician has not herself considered, *see Andrews*, 53 F.3d at 1041.

Here, the ALJ determined that Plaintiff retained the RFC to lift, carry, push or pull 20 pounds occasionally, with no repetitive work at or above shoulder level, bilaterally. Plaintiff could not frequently kneel, squat, crouch or crawl. AR 15. In formulating the RFC, the ALJ gave "substantial weight" to Dr. Chauhan's March 22, 2007, opinion, and noted that the opinions of State Agency physician Dr. Glaser and Agreed Medical Examiner Dr. MacClean were consistent with Dr. Chauhan's 2007 opinion. AR 18.

As an initial matter, Plaintiff contends that the ALJ erred by not giving "controlling weight" to Dr. Chauhan's 2007 opinion. However, he states that he gave the opinion "substantial weight" and the RFC is an exact reflection of the 2007 opinion. AR 18. 19. Specifically, the ALJ explained that the opinion "is consistent with the medical record, objective findings and overall evidence of record." AR 18. Although the ALJ's later statement that he could not give the 2007 opinion "controlling weight" because Dr. Chauhan contradicted himself with his 2010 opinion seems contradictory, it is clear that he adopted the 2007 opinion in full. Plaintiff's argument regarding the 2007 opinion is therefore moot.

Turning to the ALJ's treatment of Dr. Chauhan's restrictive 2010 opinion, which would prohibit even sedentary work, the ALJ was clear in his rejection. AR 19. He explained that Dr.

Chauhan's opinion was based in part on Plaintiff's anxiety and chronic pain syndrome, but his most recent treatment notes did not include such diagnoses. AR 19, 725, 727. Indeed, his treatment notes from the same day do not discuss anxiety in any way- Plaintiff doesn't complain of anxiety, there is no mental status examination and Dr. Chauhan does not diagnose anxiety. Similarly, although his treatment notes diagnose Plaintiff with "insomnia due to chronic pain" from her back, neck and knee pain, Dr. Chauhan based his finding that Plaintiff was precluded from permanent employment on "chronic pain syndrome." AR 727. However, he never actually diagnosed "chronic pain syndrome," which is a specific disorder with its own set of diagnostic considerations. The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Next, the ALJ explained that the February 2010 opinion appeared to be based on Plaintiff's subjective complaints, rather than objective findings. AR 19. "For example, in February 2010, Dr. Chauhan noted the claimant's gait was normal, noted only slight spasm in the cervical, lumbar and thoracic spine, no shoulder tenderness, and reported decreased range of motion in the <u>left</u> shoulder (sic) due to neck pain." The ALJ concluded that these findings were not consistent with Dr. Chauhan's limitations. AR 19. Indeed, since Dr. Chauhan's less limiting 2007 opinion, Plaintiff's examinations and complaints were mainly unchanged. AR 496-500, 523-527, 639-643, 633-638, 686-690, 698-702, 703-707, 756-761. The only changes between the 2007 opinion and the 2010 opinion were (1) a complaint on increased low back pain with positive straight leg raising on the left and decreased left hip flexion due to low back pain; (2) an added diagnosis of insomnia; and (3) a "somewhat worse" May 2008 MRI. AR 518-522, 633-638, 686-690. Moreover, even though he characterized the MRI as "somewhat worse," it showed no evidence of disc bulge, herniation or significant degenerative disease. AR 662. A

16

lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

In her argument, Plaintiff cites medical evidence in support of Dr. Chauhan's opinions and contends that her pain had worsened since the 2007 assessment.  However, most of the evidence she cites was prior to Dr. Chauhan's 2007 opinion, which, as explained above, was adopted by the ALJ.  The only other piece of evidence cited is the May 2008 MRI.  Again, the MRI showed no evidence of disc bulge, herniation or significant degenerative disease. Additionally, after reviewing the MRI, Dr. Chauhan noted, "if the patient continues to be quite symptomatically she may require a neurosurgery referral."  AR 635.  There is no evidence in the record that such a referral was ever made.  Nonetheless, a plaintiff will not prevail simply because there is evidence supporting his or her position. *Richardson v.  Perales*, 402 U.S. at 399; Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  Rather, the decision of the Commissioner to deny benefits will be overturned only if it is not supported by substantial evidence or is based on legal error.  *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992).

Accordingly, the ALJ's treatment of the medical opinions was supported by substantial evidence and free of legal error.

B.    Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in failing to find her credible.  In support, she cites her longitudinal treatment history with Dr. Chauhan and certain medical evidence.  She does not, however, contest any of the reasons set forth by the ALJ.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989).

However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "specific, cogent reasons for the disbelief." *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*.

Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

In assessing Plaintiff's credibility, the ALJ found that her impairments could reasonably cause some of her alleged symptoms, but not to the extent alleged. AR 16. He first explained that many of the symptoms she complained of (radiating pain and loss of strength and numbness in right arm, and inability to open cans) could not reasonably be expected to result from her medically determinable impairments. AR 18. Indeed, a review of the medical records indicates that her complaints centered around neck, back and knee pain. Although she complained at times of radiating pain to the left[1] upper extremity in 2007, a March 2006 EMG was normal. AR 403, 468, 524, 528-529. Moreover, when Dr. Chauhan tested strength and sensation, the results were normal. Plaintiff's complaints of radiating arm pain were not consistent and by 2008, they had disappeared altogether. AR 518-519, 686-687, 698-699, 704. As the ALJ noted, and there was no objective evidence to support her complaints. AR 18.

---

[1] The Court notes that the treatment notes often refer to *left* arm radiating pain. AR 403-408, 420-421, 436-453.

Similarly, although Plaintiff testified that the numbness and radiating pain in her arm had worsened over the past two years, the ALJ found that no credible evidence existed to support this.  Dr. Chauhan's recent treatment notes did not reflect any worsening complaints, or even any arm complaints at all.  AR 18.  For example, by March 2008, she no longer complained of radiating arm pain.  AR 518-519.  From that point forward, Plaintiff denied new injuries and her complaints involved her neck, back and knee.  AR 686-687, 698-699, 704, 750.  His most recent treatment notes from February 2010 do not reflect any arm complaints.  AR 750.  Other than decreased range of motion in her left shoulder because of neck pain, her shoulder examination was normal.  Muscle strength testing was normal in both hands.  AR 751.

Although Plaintiff cites her longitudinal treatment history with Dr. Chauhan and the MRI results, this doesn't change the result.  With respect to her back, neck and knee pain, the ALJ found that certain limitations reasonably resulted from those impairments and incorporated the limitations into the RFC.  Plaintiff's treatment history and objective evidence support the RFC, but do not support the severity of Plaintiff's complaints related to her arms.

Finally, the ALJ noted the discrepancy between Plaintiff's allegations and her daily activities.  For example, although Plaintiff testified that she could not sit continuously for more than 15 to 20 minutes, she admitted to driving herself 1.5 hours to the hearing with only two stops.  AR 18.  The ALJ may use "ordinary techniques" in addressing credibility.  *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), and may make inferences "logically flowing from the evidence."  *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996).

The ALJ also explained that although her activities of daily living were few, Plaintiff testified that she was able to ride and groom horses and mount a horse without assistance.  AR 19.  The ALJ concluded that her ability to do these things "indicates that she can exert herself much more than she admits, particularly with regard to sitting, bending, reaching and using her hands.  AR 19.  The Court notes that Plaintiff actually testified that she needed assistance to

mount the horse, though this does not make the overall analysis improper.  With or without assistance, Plaintiff was engaging in activities that the ALJ deemed inconsistent with her testimony of severe pain and limitations.  AR 19.  In any event, the Court can uphold the ALJ's credibility determination even though one reason may have been in error.  *Batson v. Barnhart*, 359 F.3D 1190, 1197 (9th Cir. 2004).

For these reasons, the ALJ's credibility analysis was supported by substantial evidence.

C.    Side Effects of Medication

Finally, Plaintiff argues that the ALJ erred by not discussing or considering her testimony about the side effects of her medication.  Plaintiff testified that her medications make her feel "drunk" and impede her concentration.

SSR 96-7p explains that the ALJ may consider numerous factors in the credibility determination, including the "type, dosage, effectiveness, and adverse side effects of any pain medication."  Side effects of prescribed medication may also have a significant effect on an individual's ability to work, and therefore should be considered in making a disability determination.  *Varney v. Sec'y of Health & Human Serv.*, 846 F.2d 581, 585 (9th Cir. 1988).

Here, in discussing Plaintiff's credibility, the ALJ explained that she alleged an inability to work because of "pain radiating to her right arm, dizziness from medications, gallbladder surgery in 2009, and residuals from right knee surgery in 2003."  AR 18.  For the reasons discussed in the prior section, the ALJ found that Plaintiff's subjective testimony, including her testimony about the side effects, was not entirely credible.  AR 18-19.  The ALJ discussed the objective evidence, which did not include *any* complaints about negative side effects.  The ALJ also noted that although Plaintiff testified that her medications were not effective, she never reported this to Dr. Chauhan.  In fact, in February 2010, Dr. Chauhan stated that Plaintiff's medications allowed her to remain functional.  AR 749.  On numerous other occasions, Dr. Chauhan noted that her medications were helping control her symptoms.  AR 523, 528.

Insofar as Plaintiff faults the ALJ for describing the side effect as "dizziness" rather than "intoxication," her argument fails.  When asked to explain "intoxicated" or "drunk" at the hearing, Plaintiff testified that her medications make her feel dizzy.  AR 35, 40-41.  His description is therefore supported by the record.

The ALJ's consideration of Plaintiff's testimony regarding the side effects of her medication was supported by substantial evidence and free of legal error.

### <u>CONCLUSION</u>

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Debra Lynn Bowen.

IT IS SO ORDERED.

Dated:   __**September 12, 2012**__          ____/s/ _Dennis L. Beck___
                                                       UNITED STATES MAGISTRATE JUDGE